940 F.2d 668
 Unpublished Disposition
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 NEWMONT GOLD CO., Plaintiff-Appellant,
v.
T LAZY S RANCH, Charles B. Thornton, Jr., William Laney
Thornton, Hodge & Company, a California Partnership, Marilyn
L. Hodge, James F. Ash, Robert C. Ash, Charles E. Ash,
Loretta M. Ackerson, Roy L. Ash, Lila M. Ash, Defendants-Appellees,
 
 1
 No. 90-15204.
 
 
 2
 United States Court of Appeals, Ninth Circuit.
 
 Argued and Submitted July 19, 1991.*
Decided Aug. 7, 1991.
 
 3
 Before GOODWIN and SNEED, Circuit Judges, TAYLOR*, District Judge.
 
 
 4
 MEMORANDUM**
 
 
 5
 Newmont Gold Company (Newmont) appeals a summary judgment in favor of T Lazy S Ranch (Lessors) to enforce the terms of a lease between Lessors and Newmont. The lease in question provided that Newmont would lease from Lessors certain mineral rights in a property known as the Gold Quarry Property (Gold Quarry). As part of the agreement, Newmont would mine and process the minerals, giving Lessors a royalty percentage of the production.
 
 
 6
 Under the terms of this lease, Newmont was required to spend $45 million in "Development Expenditures," to develop mining and processing facilities to serve Gold Quarry ore. The lease provided that "all Processing Facilities, the cost of which are included in Development Expenditures, shall be dedicated to the treatment of the ores from the Gold Quarry Deposit." (emphasis added). Newmont included the cost of an ore processing mill (Mill No. 2) as part of its required development expenditures. However, Newmont then filed a motion for summary judgment requesting that the Mill No. 2 facilities be excluded from the lease's definition of "Processing Facilities." Lessors filed a counterclaim requesting that Mill No. 2 be dedicated to processing ores under the lease.
 
 
 7
 The district court concluded that the lease could be interpreted on its face and did not require the introduction of any parole evidence. The district court found that Mill No. 2 fell within the lease's definition of "Processing Facilities." The court then granted summary judgment for Lessors, concluding that because Mill No. 2 was a processing facility whose cost had been included in "Development Expenditures," the lease required Newmont to dedicate Mill No. 2 to treating Gold Quarry ores. We review the grant of summary judgment de novo. Northwest Acceptance Corp. v. Lynnwood Equip., Inc., 841 F.2d 918, 920 (9th Cir.1988).
 
 
 8
 The first issue is whether Mill No. 2 falls within the lease's definition of "Processing Facilities." The lease states:
 
 
 9
 the term "Processing Facilities" shall mean ore leaching pads, crushing and screening facilities, dump leaching pads, associated ponds and pipes and the plant designed to reclaim the gold from the gold bearing liquors generated from the leaching processes, along with such equipment as is necessary to supply ores to these processing facilities.
 
 
 10
 Newmont contends that the term "Processing Facilities," under the terms of the lease, refers exclusively to facilities employing the "leaching" and not the "milling" method of processing. In interpreting the term "Processing Facilities," the contract "must be read as a whole and every part interpreted with reference to the whole" so as to determine the parties' intent. Shakey's, Inc. v. Covalt, 704 F.2d 426, 434 (9th Cir.1983). Newmont states that the use of a milling process was never intended by the parties. However, such a contention is unsupported and is in direct conflict with other clauses contained within the lease. In fact, two other separate portions of the lease, Schedule D and Schedule B, specifically mention the probable use and development of mill processing facilities.
 
 
 11
 Schedule D sets out the various methods of weighing, sampling, and assaying the ore depending on whether it had been processed in a mill or leaching facility. In Schedule B, the lease states that expenses for the development of mill facilities may be designated as "Development Expenditures." Therefore, when the lease is read as a whole, Newmont's assertion that the parties never contemplated the use of milling facilities directly contradicts the express wording of the lease and cannot be accepted.
 
 
 12
 Newmont next contends that summary judgment was improper because two plausible interpretations of "Processing Facilities" exist. Summary judgment is not appropriate where a contract is ambiguous. National Union Fire Ins. Co. v. Argonaut Ins. Co., 701 F.2d 95, 97 (9th Cir.1983). A contract is rendered ambiguous if there is more than one plausible meaning or if it is reasonably subject to various interpretations. Castaneda v. Dura-Vent Corp., 648 F.2d 612, 619 (9th Cir.1981). However, mere disagreement by the parties of a contract's meaning does not render it ambiguous. Kennewick Irr. Dist. v. United States, 880 F.2d 1018, 1032 (9th Cir.1989). Ambiguity is also not established if the alternate interpretation is a "strained" rather than a reasonable view. Tzung v. State Farm Fire and Cas. Co., 873 F.2d 1338, 1340 (9th Cir.1989). Finally, a contract may not be read so as make other portions of the contract illusory. Kennewick, 880 F.2d at 1032.
 
 
 13
 In applying these rules of contract to the lease agreement, and when reading it as a whole, it would be unreasonable to conclude that the contract is ambiguous and subject to Newmont's suggested interpretation. Newmont is essentially arguing that it could use the cost of Mill No. 2 to fulfill its "Development Expenditures" obligation without using that facility to process any gold from Lessor's quarry. Such interpretation, if adopted, would render the "Development Expenditures" clause illusory. Therefore, because alternate interpretations are not within reason and would render a portion of the lease illusory, we affirm the district court's grant of summary judgment.
 
 
 14
 The final issue is whether the district court erred by not granting Newmont's request for the admission of parole evidence to interpret the term "Processing Facilities." Newmont contends that it needed to introduce parole evidence to show the industry meaning of the term. Generally, the words of a contract must be given their plain and ordinary meaning. Restatement (Second) of Contracts Sec. 202(3) & comment (e) (1981). However, in some cases, words which are used in an industrial setting should be given the definition accorded to them by the industry in which they are being used. Pacific Portland Cement Co. v. Food Machinery & Chemical Corp., 178 F.2d 541, 552 (9th Cir.1949) (applying California law). Parole evidence, however, may not be considered if the contract is unambiguous. Manetti-Farrow, Inc. v. Gucci Am., Inc., 858 F.2d 509, 514 (9th Cir.1988).
 
 
 15
 As stated earlier, we believe that the lease is unambiguous. When reading the definition of "Processing Facilities" in the context of the remainder of the lease, we find that the parties' intent can be determined by looking to the four corners of the document, without the introduction of parole evidence. Therefore, we hold that the district court properly denied the admission of parole evidence.
 
 
 16
 AFFIRMED.
 
 
 
 *
 Honorable Gary L. Taylor, United States District Judge for the Central District of California, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3